IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **FLOYD WORLEY,** | ) |
| | ) |
| Plaintiff, | ) Case No. 1:22-cv-233 |
| | ) |
| v. | ) |
| | ) |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC., and TRANS UNION, LLC.,** | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

NOW COMES the plaintiff, FLOYD WORLEY, by and through his attorneys, SMITHMARCO, P.C., and for his Complaint against the defendants, PORTFOLIO RECOVERY ASSOCIATES, LLC. and TRANS UNION, LLC., Plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

### II.   JURISDICTION & VENUE

2. Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

4. FLOYD WORLEY, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Indianapolis, County of Marion, State of Indianapolis.

5. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

6. Defendant, PORTFOLIO RECOVERY ASSOCIATES, LLC. (hereinafter, "PORTFOLIO"), business entity engaged in the collection of debts from consumers within the State of Indiana. PORTFOLIO's principal place of business is located in the State of Virginia. PORTFOLIO is incorporated in the State of Indiana.

7. At all relevant times PORTFOLIO was a "person" as that term is defined by 15 U.S.C. §1681a(b).

8. Defendant, TRANS UNION, LLC. (hereinafter, "TRANS UNION"), is a business entity that regularly conducts business throughout every state and county in the United States and as a corporation that does business in the state of Illinois, is a citizen of the state of Indiana.

9. At all relevant times TRANS UNION was a "person" as that term is defined by 15 U.S.C. §1681a(b).

10. At all relevant times TRANS UNION was a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

## IV.    ALLEGATIONS

**COUNT I: FLOYD WORLEY v. PORTFOLIO RECOVERY ASSOCIATES, LLC.**

11. As alleged in this pleading, "credit reports" are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

12. Prior to September 10, 2019, Plaintiff had an account with PORTFOLIO.

13. Upon information and belief, the account Plaintiff had with PORTFOLIO was for a credit card balance.

14. On September 10, 2019, Plaintiff filed a Chapter 7 bankruptcy petition (hereinafter, the "Bankruptcy Petition") in the United States Bankruptcy Court for the Southern District of

Indiana (hereinafter, the "Bankruptcy Court"), commencing bankruptcy case number 19-06724-JMC-7.

15. At the time Plaintiff filed his Bankruptcy Petition, he owed a debt to PORTFOLIO (hereinafter, "the Debt").

16. Plaintiff scheduled the Debt in his Bankruptcy Petition.

17. At the time Plaintiff filed his bankruptcy petition, he owed no other debt to PORTFOLIO.

18. At the time Plaintiff filed his bankruptcy petition, he had no other accounts with PORTFOLIO.

19. On or about December 17, 2019, the Bankruptcy Court entered an order discharging Plaintiff's debts, thereby extinguishing his liability for the Debt (hereinafter, "the Discharge Order").

20. When the Bankruptcy Court entered the Discharge Order, the debtor-creditor relationship ended between Plaintiff and PORTFOLIO as to the Debt

21. Moreover, at the time of Plaintiff's discharge, there were no assets in the bankruptcy estate from which to make any distribution to Plaintiff's potential creditors.

22. Given that Plaintiff's bankruptcy discharge resulted in a *Report of No Distribution* (i.e., Plaintiff had no assets in his estate to distribute to any creditors), any unsecured debts that were incurred prior to the filing of Plaintiff's bankruptcy petition are considered discharged, irrespective of whether the debt was specifically listed in Plaintiff's schedule of creditors, filed as part of his Bankruptcy Petition.

23. The Debt, and any other account(s) Plaintiff had with PORTFOLIO, or that had been assigned to PORTFOLIO, and that had been incurred prior to the date Plaintiff filed his Bankruptcy Petition, were effectively discharged as of the date of the Discharge Order.

24. On or about December 19, 2019, the Bankruptcy Court served a Certificate of Notice on PORTFOLIO, which included a copy of the Discharge Order.

25. As of December 19, 2019, PORTFOLIO was effectively put on notice that any debt incurred prior to the filing of Plaintiff's Bankruptcy Petition was discharged.

26. PORTFOLIO was aware that any debt incurred by Plaintiff prior to September 10, 2019, which was assigned to PORTFOLIO for collection, was discharged in bankruptcy.

27. At the time Plaintiff filed his Bankruptcy Petition, Plaintiff was unaware to whom the Debt was originally owed, however, Plaintiff scheduled the aforementioned debt in his Bankruptcy Petition as an unsecured debt.

28. PORTFOLIO was aware that any debt incurred by Plaintiff prior to September 10, 2019, which was assigned to PORTFOLIO for collection, was discharged in bankruptcy.

29. At no time since December 17, 2019, has Plaintiff owed any debt to PORTFOLIO.

30. At no time since December 17, 2019, has Plaintiff opened any accounts with PORTFOLIO.

31. At no time since December 17, 2019, has Plaintiff had any personal business relationship with PORTFOLIO.

32. Given the facts delineated above, at no time since December 17, 2019, has PORTFOLIO had any information in its possession to suggest that Plaintiff owed a debt to PORTFOLIO.

33. Given the facts delineated above, at no time since December 17, 2019, has PORTFOLIO had any information in its possession to suggest that Plaintiff was responsible to pay a debt to PORTFOLIO.

34. Defendant, TRANS UNION, a consumer reporting agency, is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

35. Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided, (iv) social security number, (v) date of birth, (vi) current telephone number, (vii) previous known telephone number(s), (viii) current employer; (ix) former employer(s); (x) public records, (xi) account histories with all reporting creditors, including, but not limited to home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

36. Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only. See *TRW Inc., v. Andrews*, 534 U.S. 19, 23 (2001).

37. The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.,* 846 F.3d 1034, 1037 (9th Cir. 2017) (citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128). *See also*, *United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair

Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital*, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

        38.      When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).

        39.      Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**.  To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

        40.      PORTFOLIO is a subscriber and user of consumer reports issued by TRANS UNION.

        41.      PORTFOLIO also furnishes data to TRANS UNION about its experiences with its customers and potential customers.

        42.      PORTFOLIO is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agency about its transactions and/or other experiences with consumers.

        43.      PORTFOLIO has a symbiotic relationship with TRANS UNION such that it furnishes information to TRANS UNION regarding its transactions and/or other experiences with consumers while also purchasing from TRANS UNION information about its customers and other consumers.

44. On or about February 7, 2020, despite being cognizant of the facts as delineated above, PORTFOLIO procured from TRANS UNION a copy of Plaintiff's consumer report at which time, PORTFOLIO made a general or specific certification to TRANS UNION that PORTFOLIO sought the consumer report in connection with a business transaction initiated by Plaintiff, to review an account to determine whether Plaintiff continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA.

45. The certification made by PORTFOLIO to TRANS UNION was false.

46. Despite certifying to TRANS UNION that it had a permissible purpose for procuring Plaintiff's consumer report, PORTFOLIO had no such permissible purpose.

47. At no time on or prior to February 7, 2020, did Plaintiff consent to PORTFOLIO obtaining his consumer report.

48. On or about February 7, 2020, despite being cognizant of the facts as delineated above, PORTFOLIO impermissibly procured from TRANS UNION Plaintiff's individual and personal credit report.

49. On or about February 7, 2020, at the time PORTFOLIO impermissibly procured from TRANS UNION Plaintiff's individual and personal credit report, Plaintiff's Confidential Information was published to PORTFOLIO.

50. On or about February 7, 2020, at the time PORTFOLIO impermissibly procured from TRANS UNION Plaintiff's individual and personal credit report, PORTFOLIO reviewed Plaintiff's Confidential Information.

51. On or about February 7, 2020, at the time PORTFOLIO impermissibly procured from TRANS UNION Plaintiff's individual and personal credit report, unknown employees, representative and/or agents of PORTFOLIO viewed Plaintiff's Confidential Information.

52. On or about February 7, 2020, at the time PORTFOLIO impermissibly procured from TRANS UNION Plaintiff's individual and personal credit report, PORTFOLIO obtained information relative to Plaintiff's credit history and credit worthiness.

53. Plaintiff has a right to have his Confidential Information kept private.

54. No individual/entity is permitted to obtain and review Plaintiff's personal and confidential information unless either Plaintiff provides his consent for the release of the information, or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

55. PORTFOLIO procured from TRANS UNION Plaintiff's consumer report without his knowledge or consent.

56. PORTFOLIO procured from TRANS UNION Plaintiff's consumer report without a permissible purpose.

57. By its actions, when PORTFOLIO impermissibly procured from TRANS UNION Plaintiff's individual and personal credit report, PORTFOLIO invaded Plaintiff's privacy.

58. By its actions, when PORTFOLIO impermissibly procured from TRANS UNION Plaintiff's individual and personal credit report, PORTFOLIO effectively intruded upon the seclusion of Plaintiff's private affairs.

59. When Plaintiff discovered that PORTFOLIO had procured his personal, private and confidential information from one or more consumer reporting agency, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from PORTFOLIO's invasion of her privacy.

60. When Plaintiff discovered that PORTFOLIO had procured his personal, private and confidential information from one or more consumer reporting agency, Plaintiff was extremely

worried, concerned and frustrated that PORTFOLIO's impermissible access of his personal, private and confidential information from one or more consumer reporting agency could continue indefinitely.

61. When Plaintiff discovered that PORTFOLIO had procured his Confidential Information from one or more consumer reporting agency, Plaintiff was concerned about the continued security and privacy of his Confidential Information.

62. When Plaintiff received his Discharge Order from the Bankruptcy Court, he rightfully believed that his business relationship with PORTFOLIO had come to an end. When Plaintiff discovered that PORTFOLIO had procured her Confidential Information after it had been sent notice of Plaintiff's bankruptcy discharge, Plaintiff believed that PORTFOLIO would continue to act with impunity and continue to procure his Confidential Information indefinitely.

63. The actions of PORTFOLIO caused Plaintiff to suffer from frustration, anxiety and emotional distress that manifested itself such that: (i) Plaintiff had difficulty falling to sleep and/or staying asleep; (ii) Plaintiff had a loss of appetite.

## **COUNT II: FLOYD WORLEY v. TRANS UNION, LLC.**

64. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein; pleading in the alternative, and without prejudice as to any other allegations contained herein, Plaintiff alleges the following:

65. On September 10, 2019, Plaintiff filed a Chapter 7 bankruptcy petition and included the Debt.

66. Upon information and belief. on or around September 10, 2019, PORTFOLIO transmitted to TRANS UNION a deletion request for all subsequent account reviews associated with the Debt.

67. At no time on or prior to February 7, 2020, did Plaintiff give TRANS UNION authority to sell his individual and personal credit report to PORTFOLIO.

68. On or about February 7, 2020, despite being cognizant of the facts as delineated above, TRANS UNION sold Plaintiff's individual and personal credit file to PORTFOLIO.

69. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION allowed PORTFOLIO to review Plaintiff's private information without a permissible purpose to do so.

70. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION allowed PORTFOLIO to obtain information relative to Plaintiff's personal and individual credit accounts.

71. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION allowed PORTFOLIO to obtain information relative to Plaintiff's payment history on his individual credit accounts.

72. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION allowed PORTFOLIO to obtain information relative to Plaintiff's credit history and credit worthiness.

73. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, Plaintiff's private financial information was published to PORTFOLIO.

74. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION allowed unknown employees, representative and/or agents of PORTFOLIO to view Plaintiff's private financial information.

75. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, February 7, 2020UNION allowed PORTFOLIO to obtain personal information about Plaintiff, such as his current and past addresses; date of birth; employment history; and telephone number(s).

76. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION allowed PORTFOLIO to access Plaintiff's individual and personal credit report, and Plaintiff's personal information, as delineated above, was published to PORTFOLIO.

77. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION had no reason to believe that PORTFOLIO intended to use Plaintiff's information in connection with a credit transaction.

78. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION had no reason to believe that PORTFOLIO intended to use Plaintiff's information for employment purposes.

79. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION had no reason to believe that PORTFOLIO intended to use Plaintiff's information in connection with the underwriting of insurance.

80. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION had no reason to believe that PORTFOLIO intended to use Plaintiff's information in connection with Plaintiff's eligibility for a license or other governmental benefit.

81. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION had no reason to believe that PORTFOLIO

intended to use Plaintiff's information as a potential investor/servicer/insurer, in connection with an existing credit obligation.

82. On or about February 7, 2020, at the time TRANS UNION sold Plaintiff's individual and personal credit report, TRANS UNION had no reason to believe that PORTFOLIO intended to use Plaintiff's information in connection with the issuance of a government-sponsored, individually billed, travel charge card.

83. TRANS UNION's conduct, as delineated above, is a violation of 15 U.S.C. §1681b(a).

84. TRANS UNION sold to PORTFOLIO Plaintiff's consumer report without a permissible purpose.

85. By its actions, when TRANS UNION sold to PORTFOLIO Plaintiff's individual and personal credit report without a permissible purpose, it permitted PORTFOLIO to invade Plaintiff's privacy.

86. By its actions, when TRANS UNION sold to PORTFOLIO Plaintiff's individual and personal credit report without a permissible purpose, it effectively allowed PORTFOLIO to intrude upon the seclusion of Plaintiff's private affairs.

87. When Plaintiff discovered that TRANS UNION had sold her personal, private and confidential information to PORTFOLIO, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from this invasion of his privacy.

88. When Plaintiff discovered that TRANS UNION had sold his personal, private and confidential information to PORTFOLIO, Plaintiff was extremely worried, concerned and frustrated that TRANS UNION would continue to publish his information to unknown third parties indefinitely.

89. When Plaintiff discovered that TRANS UNION had sold his personal, private and confidential information to PORTFOLIO, Plaintiff was concerned about the continued security and privacy of his Confidential Information.

90. When Plaintiff discovered that TRANS UNION had sold his Confidential Information to PORTFOLIO, after Plaintiff's bankruptcy discharge, Plaintiff believed that TRANS UNION would continue to act with impunity and continue to publish his Confidential Information indefinitely.

91. The actions of TRANS UNION caused Plaintiff to suffer from frustration, anxiety and emotional distress that manifested itself such that: (i) Plaintiff had difficulty falling to sleep and/or staying asleep; (ii) Plaintiff had a loss of appetite.

WHEREFORE, Plaintiff, FLOYD WORLEY, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against TRANS UNION as follows:

    a. All actual compensatory damages suffered;
    b. Statutory damages of $1,000.00 for TRANS UNION's violation of the FCRA;
    c. Punitive damages;
    d. Plaintiff's attorneys' fees and costs; and,
    e. Any other relief deemed appropriate by this Honorable Court.

### V. JURY DEMAND

92. Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
**FLOYD WORLEY**

Dated: February 1, 2022        By:   s/ David M. Marco
                                                  Attorney for Plaintiff

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
E-Mail: dmarco@smithmarco.com